UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO: 03-146-ART

PATRICIA BOSTIC,                                                                              PLAINTIFF,

VS.                                    **OPINION AND ORDER**

AMMAR'S, INC.,
TRUE SEATING CONCEPTS, INC.;
LIHAO FURNITURE CO., LDT.;
TRUE MANUFACTURING DONGGUAN PLANT;
SOUND AND LEVEL BEST PRODUCTS CO., LTD.;
TRUE SEATING CONCEPTS, LLC; and
UNKNOWN DEFENDANTS,                                                                DEFENDANTS.

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the undersigned on the Motion to Compel of Defendants True Seating Concepts, LLC, and True Seating Concepts, Inc. [R. 221]. Defendant Ammar's, Inc., has filed a Response [R. 223]. Having been fully briefed, this matter is ripe for consideration.

## I. RELEVANT FACTS

In April 2003, Plaintiff Patricia Bostic filed a complaint alleging that she was injured when a leather office chair she sat in collapsed [R. 1-2]. The Chair, manufactured by Defendant True Seating Concepts, Inc., was part of a floor display at a store owned by Defendant Ammar's, Inc. [R. 1-2].

On January 14, 2011, the parties participated in an informal telephone conference held before the undersigned [R. 220] regarding discovery disputes raised by Defense counsel. Counsel were permitted to file relevant discovery motions regarding the issues raised during the conference. It was ordered that all relevant motions be submitted by Tuesday, January 18, 2011, at 12:00 p.m.,

with responses to be submitted by Friday, January 21, 2011, at 5:00p.m. [R. 220].

Defendants True Seating Concepts, Inc., and True Seating Concepts, LLC, (hereinafter "True"), filed a timely Motion to Compel Inspection of Subject Chair [R. 221] along with a memorandum in support of said motion [R. 221-2]. In its motion, True requests that Ammar's, Inc., (hereinafter "Ammar's"), produce the chair alleged by Plaintiff to be the mechanism of her injury for inspection in the state of Kentucky [R. 221-2]. The chair is currently stored in Chicago by its current possessor Ammar's; however, Plaintiff's injury occurred in Pikeville, Kentucky, and the chair will eventually have to be transported to that location for trial [R. 221-2; R. 1].

True also argues that it should not be required to bear the expense of travel for inspection of the chair [R. 221-2]. In support of its position, True points out that the chair has already been inspected by Plaintiff's and Ammar's experts on two different occasions when True Seating Concepts, Inc., was represented by different counsel and True Seating Concepts, LLC, was not a party to the lawsuit [Id.].

Further, True requests that it, along with its expert, be permitted to inspect the chair for purposes of completing discovery [R. 221-2]. The protocol proposed by True first sets out a process of documenting the subject chair [R. 221-7].[1] The next step would be to drill into the seat pan to obtain "plug samples" from the seat pan.[2] [Id.; R. 221-2]. Finally, "depending on what is discovered" during the first two steps of the protocol, the following step would be to disassemble

---

[1] The documentation would be done through photographs and video externally from numerous different angles, such that the "condition" of the chair seat can be videotaped thoroughly throughout the inspection. This step of True's proposed protocol is not in issue because it merely sets out a process of documenting the chair and does not involve any type of destructive testing.

[2] These samples would be anywhere from 1 to 3 in quantity and 1" to 2-1/2" in diameter, extracted at or near the area where the seat back attaches.

2

the chair entirely [R. 221-7].³ The final step would be to re-assemble the chair to its pre-inspection condition. [Id.]. According to True, "the portions of the chair most at issue in this litigation are the seat, seat pan, and seat back assembly" and an inspection of those portions must be performed scrupulously by its expert [R. 221-2].

In turn, Defendant Ammar's filed a Response Memorandum in Opposition to True's Motion to Compel [R. 223]. First, Ammar's objects to the relocation of the chair on the grounds that subjecting the chair to risk of damage or loss through transport is unreasonable under Fed. R. Civ. P. 34 [R. 223]. Further, any type of disassembly or destructive testing would result in undue prejudice to Ammar's defense of Plaintiff's negligent assembly claim at trial [Id.].

Ammar's position is that allowing True a "limited, minimal amount of destructive testing [only in its own laboratory] by way of cutting into a small section of the seat upholstery that has already been cut in order to obtain a plywood sample" should be sufficient for any type of testing True wishes to perform [R. 223]. According to Ammar's, disassembly will unnecessarily alter the appearance of the chair for trial [Id.].

Moreover, Ammar's argues that transporting the chair to Kentucky would "impose an unreasonable burden" because its expert would be forced to travel to Kentucky to continue his research without the convenience of his lab or technical equipment [Id.]. As such, Ammar's argues that True, as the requesting party, should bear all of the burden and expense associated with any type of inspection of the chair.

## II. DISCUSSION

---

[3] This could involve removing all screws associated with assembly, detaching various components of the seat pan, accessing the internal materials and structures, or separating all internal structures of the seat pan to perform an internal examination. A video camera would be set to show any disassembly and/or destructive efforts throughout the inspection such that the inspection could be documented through the entire process. [Id.].

Rule 34 of the Federal Rules of Civil Procedure provides that a party may make a request "to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any tangible things" within the scope of Rule 26(b). Fed. R. Civ. P. 34(a)(1)(B). In turn, Rule 26(b) provides that discovery may be obtained "regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b). The request for discovery under Rule 34 "must specify a reasonable time, place, and manner for the inspection and for performing the related acts[.]" Fed. R. Civ. P. 34(b)(1)(B).

Generally, Rule 34 "contemplates an exercise of judgment by the court, not a mere automatic granting of a motion." Hudalla v. Chicago, M., St. P. & P.R. Co., 10 F.R.D. 363, 367 (D. Minn. 1950). Likewise, a "motion for production [under Rule 34] is one which is addressed to the sound discretion of the trial court." Thomas v. Nuss, 353 F.2d 257, 258 (6th Cir. 1965).

Several courts have dealt with the issue of "destructive testing"[4] in relation to production of "tangible things" within the parameters of Rule 34. See, e.g., Mirchandani v. Home Depot, U.S.A., Inc., 235 F.R.D. 611, 612 - 15 (D. Md. 2006) (permitting limited destructive testing in accordance with protocol under a four-factor balancing test); Spell v. Knedall-Futuro Co., 155 F.R.D. 587, 588 (E.D. Tex. 1994) (granting motion for destructive testing with specific limitations as to location and protocol such that the testing does not completely destroy the object tested); Ostrander v. Cone Mills, Inc., 119 F.R.D. 417, 419 - 21 (balancing the interests in preserving the evidence against the interests served by destructive testing when entertaining a motion for destructive testing); Dabney v. Montgomery Ward & Co., Inc., 761 F.2d 494, 498 (8th Cir. 1985) (upholding denial of trial court's decision to deny destructive testing because the movant failed to

---

[4] Destructive testing is testing which would result in alteration or destruction. See "Propriety of Discovery Order Permitting 'Destructive testing' of Chattel in Civil Case," 11 A.L.R. 4th 1245 (2004); see, e.g., supra.

state that the testing would provide evidence necessary for its defense). Courts typically require the testing party to allow the opposing party an opportunity to observe the testing. Spell, 155 F.R.D. 587.

For purposes of the discussion below, and because there is no law to the contrary in this jurisdiction, this court will use the test adopted by the court in Mirchandani v. Home Depot, U.S.A., Inc., 235 F.R.D. 611, 614 (D. Md. 2006). The inquiries relevant to the analysis are: "1) Whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) Whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) Whether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) Whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial." Id.

**1. Place of Production**

Although it is generally true that a party making the discovery request must bear the burden and expense associated with that discovery,[5] the present case is easily distinguishable from a typical request. First, the expense and burden for Ammar's in relocating the chair is, at best, minimal because the chair will eventually have to be transported to Kentucky for trial. Although, as Ammar's indicates, the subject chair may be damaged in transit, this risk will not subside between now and the point in time when Ammar's will choose to transport the chair for trial. Moreover, this risk was in existence at the time that Ammar's chose to relocate the chair from Kentucky to the present site in Chicago.

---

[5] See Ammar's Response Memorandum [R. 223] (citing Caruso v. Coleman Co., 157 F.R.D. 344, 349 - 50 (E.D. Penn 1994) (citations omitted); Gluck v. Ansett Australia Ltd., 204 F.E.D. 217, 221 (D.C. 221) (citations omitted)).

As such, allowing the parties to inspect the chair in Kentucky is reasonable, as is requiring that Defendant Ammar's bear any expense associated with the transportation of the chair.

## 2. Manner of Inspection

### A. *Reasonable, Necessary, and Relevant*

The first inquiry in this analysis is "[w]hether the proposed testing is reasonable, necessary, and relevant to proving the movant's case." Home Depot, 235 F.R.D. at 614. True argues that obtaining an assessment of the plywood and other seat materials will enable a better assessment of the quality of the plywood and other components. [R. 221-2]. In effect, inspecting the inner contents of the chair will allow True to develop its defense against Plaintiff's negligent design and manufacture claims.

Despite Ammar's contentions to the contrary, the proposed inspection of the plywood and other internal materials lies at the heart of True's defense. An assessment of the components not visible externally would provide True an opportunity to discover whether these materials are faulty or defective. In fact, the evidence sought by True is "integral to proving [its] case." Home Depot, 235 F.R.D. at 615. Thus, an inspection of the materials inside the subject chair is not only relevant, but also reasonable and necessary.

However, although True contemplates disassembly of the chair only depending on what it may discover through a "plug sample," the disassembly - as opposed to drilling into the subject chair - is actually a much more reasonable manner of inspection. First, the same objective may be accomplished by merely taking the chair apart piece by piece instead of removing several "plugs" from the seat cushion. Second, the subject chair will sustain less (if any) permanent damage and alteration if it is disassembled (rather than first drilled into, and *then* de-constructed). Finally, it is

6

unclear what type of damage may result from the process of obtaining "plug samples."

Therefore, although disassembly of the subject chair is reasonable, necessary, and relevant, obtaining the "plug samples" proposed by True is neither and shall not be permitted.

## *B. Prejudice to Defendants*

The second inquiry is "[w]hether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way." Home Depot, 235 F.R.D. at 614. Although the subject chair is a single exemplar and the sample chair is no longer available, Ammar's would not suffer any undue prejudice if True is permitted to disassemble the chair in question.

First, Plaintiff has already been permitted to cut into the plywood for inspection purposes, thereby altering the appearance of the chair from its original condition. Furthermore, Ammar's is actually willing to consent to the extraction of another small plywood sample from the chair [R. 223]. And, moreover, Ammar's has already provided several photographs of the subject chair which accurately portray its appearance for the jury [R. 223-2]. There is no indication that such photographs do not accurately depict the chair externally or that they cannot be re-created in a 'life-size' format.

Thus, because the original appearance of the chair has already been altered and because any potential prejudice to Ammar's is minimal, if any, this factor weighs in favor of the disassembly proposed by True.

## *C. Non-destructive Alternative Methods*

The next step in the inquiry is to address "[w]hether there are any less prejudicial alternative methods of obtaining the evidence sought." Home Depot, 235 F.R.D. at 614. While obtaining "plug

7

samples," at first blush, appears to be the less destructive method, for the reasons discussed above, it is much more intrusive. And, because the quality of the materials inside the seat are in issue [R. 221-2], "destructive testing" provides the best - and only - method of examining the plywood, cushion, and other internal components of the chair.

The method proposed by Ammar's - securing a small plywood sample from beneath the cushion [R. 223] - is equally destructive. Additionally, Ammar's proposed method of inspection is not only less beneficial to True's defense, but would not yield the data sought by True.

In sum, no 'non-destructive' alternatives exist that would allow True to accomplish the same objective and none have been proposed by Ammar's.

### D. *Adequate Safeguards*

The final step in the analysis is to evaluate "[w]hether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial." Home Depot, 235 F.R.D. at 614. First, it should be noted that True has proposed to re-assemble the chair to its original state as the final step of its inspection protocol [R. 221-7]. This would, in effect, allow Ammar's to present the chair in its 'original' condition to the jury. Thus, there is great likelihood that the appearance of the object would not be altered at all for presentation at trial.

Likewise, as proposed in True's protocol, photographs of the chair may be "taken intermittently throughout the disassembly to document the process and to show 'before/ after' conditions as parts are separated." [R. 221-7]. Other courts have regarded the ability to record the procedures as a safeguard. See, e.g., Spell, 155 F.R.D. at 588; Ostrander, 119 F.R.D. at 421. For instance, in Ostrander, 119 F.R.D. at 421, the court's order allowed the parties to videotape or

8

photograph the destructive proceedings. Similarly, the court in <u>Spell</u>, 155 F.R.D. at 588, imposed a duty on the parties to "fully videotape each test from its inception to its conclusion." In <u>Home Depot</u>, 235 F.R.D. at 617, the original state of the object was also preserved through videotape and photography.

Thus, as long as True bears its burden of thoroughly documenting each step of its destructive testing through photographs, videotape, or any other appropriate method, adequate safeguards are in place to minimize the potential for prejudice to Ammar's.

### III. CONCLUSION

The Court has fully considered the arguments of counsel, and has determined that further briefing of this matter is not necessary. The Court being sufficiently advised,

IT IS ORDERED HEREIN AS FOLLOWS:

(1) The Motion to Compel of Defendants True Seating Concepts, Inc., and True Seating Concepts, LLC, [R. 221] is GRANTED as to the production of the subject chair in Kentucky. Defendant Ammar's, Inc., shall produce the chair for inspection in Kentucky at a time available to all parties and shall bear the expense associated with its transportation.

(2) The Motion to Compel of Defendants True Seating Concepts, Inc., and True Seating Concepts, LLC, [R. 221] is DENIED as to the execution of the inspection which requires the removal of "plug samples" (step two of the proposed protocol, R. 221-7).

(3) The Motion to Compel of Defendants True Seating Concepts, Inc., and True Seating Concepts, LLC, [R. 221] is GRANTED as to the execution of the inspection of the subject chair which requires the total disassembly (step three of the proposed protocol, R. 221-7).

(4) It is further ORDERED, that:

9

(a) True and its expert shall permit all parties to be present throughout the inspection process.

(b) True and its expert preserve the original state of the chair through the use of videotape and photography throughout the inspection process.

(c) True and its expert assemble the chair to its original condition, to the extent possible, upon the conclusion of the inspection process.

This the 26th day of January, 2011.

Signed By:
Edward B. Atkins   *EBA*
United States Magistrate Judge